Marjorie Adams and Wayne Adams Appellants by Jason Epstein May it please the Court. My name is Jason Epstein and I'm the attorney for a plea of Ms. Adams in the matter before the Court. It's a leaky record. It was a pro se and low report. So I brought along, I don't have any plans necessarily to use this, but if there's anything in the record then maybe we can quickly dash through. This might be helpful to all of us. Just to give a brief summary of what happened. This is a foreclosure case and other than some of the intricacies in the case, it's not remarkable other than some of the procedural facts. Ms. Adams engaged in a mortgage with Fifth Third Bank in 2010. She began to fall behind on her payments. She's went to seek out a payment plan or possibly refinance of her adjustable rate mortgage and she met many closed doors. They were basically telling her that they didn't want to refinance. To her, she believed that they wanted the property. Now, when that failed, and they continued to direct her to Wells Fargo. She would go to Wells Fargo and they would say, we don't have the loan and she seemed to have the runaround. Ultimately, Fifth Third filed for foreclosure and they went to court. As a pro se, they quickly went to summary judgment. You'll see in the record that, in fact, three motions for summary judgment were filed against this pro se party. The first one was filed. She responded and then instead of a reply and an argument, what we see is a new motion for summary judgment was filed. Of course, because she's pro se, she didn't realize that she should have said, hey, what happened to our first motion for summary judgment? That didn't happen. In the new motion for summary judgment, they basically took her response and kind of incorporated it and fashioned a new motion for summary judgment. Ultimately, the case was dismissed or, excuse me, decided in favor of the bank on motion for summary judgment. We believe that that was mistakenly done for a couple of reasons. That there was a lack of standing and that she successfully executed her decision. And, of course, first and foremost, that there were disputed facts. One of the disputed facts. Now, she alleges throughout, and she did a pretty good job. When they first filed suit, she filed an affirmative defense, and she made standing in her affirmative defenses. So she's not doing too bad of a job. The facts that she raised and were never answered. She continued to say, well, where's your standing? And the bank's basic response was, well, we don't have to answer that. And they actually say that in their brief, by and large. But what they're saying in their brief is that we merely need to allege a prima facie case. And that's absolutely true. All they need to do is allege a prima facie case. They don't have to prove standing at the get-go. However, once an affirmative defense is filed and the standing issue is raised, they have to do more. The bank never did that. They just kept saying, we don't need to do more. And Ms. Adams didn't know how to basically counter them. They nearly struck her in the shoulder saying, we don't need to do more to prove that we have standing. One of the rare documents that they have, I think it was the record of 641, basically says, it says Fifth Third Bank, and then it says a directory of correspondence to Fifth Third Mortgage Company, corroborating exactly what she's saying and corroborating what she's saying. She has a runaround in attempting to save her property. Some of the disputed facts is that Wells Fargo owns the note. I argue that at page 15 on the bottom of my opening brief, because Wells Fargo gets injected here. They later claim that it has nothing to do with it. It was Fifth Third Bank all of the whole time. The holder of the note versus the agent of the holder, that that is argued at page 16 of my brief, that's another disputed fact that it should have been fleshed out that it was right for trial. What is that disputed fact? They were the holder of the note. Well, they were the holder of the note, but the agent of the loan was someone different. So to her, and I believe she's got a valid issue in that, and that comes up later in the Truth in Lending Act when we talk about the source of funds. Did Fifth Third Bank, were they the actual lender? Did they fund this note, thus consummating the original mortgage? Now, they would start the talk on the title argument that she refers to, the Truth in Lending Act argument that they claim is waived, because she did raise it after three years. However, if the source of lender, if the source of funds is not known, then that argument is told. And I would point to Ramsey versus Vista Mortgage Company, 176, bankruptcy 183. Now, that's actually a rescission argument, but it kind of relates to what your Honor is saying, and that is we don't really know. We have conflicting documents where we have, one says Fifth Third Bank, and the very address on that document says Fifth Third Mortgage. So is that the service of the note? Maybe. Maybe there is no real estate, but that was never fleshed out. That was a fact. It was a material fact, and it's disputed, but we never had proof text to flesh this out and say, okay, this is, you know, this is what it is. And they admit in their brief that it is a bit confusing because they use the Fifth Third Bank name throughout. And, of course, if it's confusing to us lawyers and courts, then clearly to Ms. Adams, a pro se individual, she's going to be confused as well. And that raises another issue that I was going to talk about in a moment, but since we're talking about Supreme Court Rule 113, all assignments have to be attached at the very beginning. Supreme Court Rule 113 says, and this is exactly why, because oftentimes we have, if you are in a position being proposed upon you, you can't afford a lawyer. So the Supreme Court had it in its wisdom to say, well, we should probably make it easier. Bank, you've got to put down all the assignments that you had straight up front. Nowhere in this case, nowhere in this record have I found it. Maybe it is because it's a long record, but I have not seen it. I looked for it again this morning, and I do not see the conformity with Supreme Court Rule 113 showing all assignments, and that would clear all this up. Maybe there is no question, but I don't even know. Are there any assignments? There was an assignment, I believe, to Fifth Third Mortgage Company. And Fifth Third Bank is the one moving, and that's why Ms. Adams alleged, you don't have standing. You're not the bank, even though it sounds like the same bank. And I think a lot of people would probably be swayed by, oh, Fifth Third is the same company. Well, no, no, this is the law. This is a party, Fifth Third Bank. This is a different party, Fifth Third Mortgage Company. Are they even related? I don't know. Maybe it's a subsidiary, and they have all the rights, but we don't know that because it wasn't fleshed out on the record. They just kind of shrugged their shoulders when Ms. Adams pressed. They never went to discovery. Ms. Adams was incapable of forcing or moving to compel any discovery, even though she did issue a document request. I don't know if she did, but I believe she did issue the document request. So with respect to most presumptive judgment, those facts should have been fleshed out beforehand. It's almost a prima facie issue as to the assignments that may have occurred. So, in other words, this issue is foreseen by the Supreme Court when, in fact, they require that parties set forth all the assignments. Now, also along those lines, Supreme Court Rule 114, when I was speaking about Supreme Court rules, basically says that an affidavit must be submitted stating that any loss mitigation programs have been addressed. That affidavit is also absent in this record. She raises loss mitigation. The appellee says, well, you waived it because you never raised it. Well, actually, that is your burden, appellee. That is your burden for Supreme Court Rule 114 to have that loss mitigation program affidavit stating that all those programs were addressed prior to foreclosure to address exactly the situation. So we don't have a pro se individual, you know, with their hands open saying, I tried, I wanted to do something, but I couldn't do anything. So we have two affidavits that, excuse me, two Supreme Court rules which are violated, which go to the core of this case. They really go to the core of the case. With respect to standing, Dutch Bank v. Gilbert. Dutch Bank, National Trust v. Gilbert, 2012, Hill House, 2nd, 120-164. Basically says forth that a prima facie defense is enough until rebutted. And I said that a moment ago. Yeah, sure, the bank's messed up, I'm not going to tell you that. All we had to do was make it primarily Europe, primarily this group. However, she gave evidence showing exactly what I mentioned a second ago about this conflicting information. And so she said, you don't have standing. You proved to me you have standing, and they never did that. In Dutch Bank, that was exactly the issue. Some of the judgment was proper in favor, or not in favor of the bank, but in fact in favor of the mortgagor. Now, also the appellee argues, they respond that, well, we did provide, she keeps saying you didn't provide us a copy, we provided a copy. And the cases they cite are really talking about original versus copy, which was an issue maybe, I don't know, 40 years, I don't know how long ago, but it used to be, it used to have the original attached, but that's not the case anymore. You can have a copy attached, which makes sense. And those cases go to that. That's not what Ms. Adams was saying. She's saying you didn't attach any of the documents. She didn't get her closing documents at the very beginning, if she asked for them. And even once the litigation started, she kept asking for these and never received them. So the standing issue was raised by her, and as a form of defense, she made a proper showing of standing, and that issue was never addressed by the appellee. Decision. Now, their best argument, the appellee makes a valid point and argument, and that is that the decision, they don't deny that it was raised, they don't deny that it was raised, but they say you raised it too late. In 2012, it would have been too late, according to them. However, as I stated earlier, because she doesn't know the source of funds, there can be no consummation of the obligation. Consummation of obligation is when the three years begins to run to make a decision. Once that three years is over, you can no longer make a decision. What's very important, though, is that once you make that showing of a decision, once you communicate to the bank, they have 20 days to respond. Now, I don't find it in the law how that plays into this game, because they're saying, well, you waived, but they never answered their 20, they didn't make their obligation in their 20 days to respond once they received her decision. I do know that because she doesn't know the funding source, maybe she made the decision to the wrong party earlier. We don't know that because we don't know the funding source. But once she made her decision to the bank, they had 20 days to respond, and they haven't responded at all. That's not anywhere in the record that I see. I believe that is all I have at this time. Well, there's a quote from Deutsch Bank that I did want to – I think it's an act. It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note and have proper supporting documentation on hand when filing the suit so that the defendant is properly apprised of the rights of the plaintiff. And I believe that echoes through to Supreme Court Rule 113 in saying you've got to give all the assignments so that we can avoid all of this game that we're having now. It would be very simple. We could tell, well, here's the assignments. The right party is to read or the wrong party is to, but we don't have that. And so I believe Ms. Adams should prevail. I believe the lower court judgment should be reversed and put back in court to a separate time. Thank you. If there's any other questions, I – Good morning, Your Honor. Good morning. You may please the court. I'm Brittany Kirk and I'm here on behalf of the Third Mortgage Company. I don't have a whole lot to say this morning, but I did want to address a few of the arguments that were raised by counsel. Many of the assertions that were just made by counsel are simply not supported by the record or not supported by admissible evidence in the record. The arguments seem to have a lack of specificity as to the dates that various things happened and various conversations happened. Many of the arguments that are presented in the brief, there is not a cite to the record, so it's difficult to respond to those sorts of things. So I just would ask that the statements in the argument and the statements in the briefs be carefully evaluated to make sure that they are supported by the record. One of the Supreme Court rules that counsel referred to, which is Rule 113, that – we believe we complied with it, but that rule was not applicable to this case. That is only applicable to cases filed after May 1st, 2013. I believe this was filed in 2010, so that rule was not applicable to this case. I would point out that we raised several issues in our response brief and no reply was filed. Was there an assignment included in the exhibits to the foreclosure complaint? No, Your Honor, but that's because the mortgage and the note were to Fifth Third Mortgage Company, so there was no need for an assignment. We would not – those were the entities that held the note and owned the note. Now, what happened was Ms. Adams made a RESCO request for documents to Fifth Third Mortgage Company for all documents related to the loan. One of the documents that was given to her in response to this was an assignment in blank, and obviously it's black-letter law that if you have an assignment in blank, the party that holds the note is the owner of the note. But essentially, in the file, there was an assignment in blank from Fifth Third Mortgage Company that wasn't attached to the complaint because there was never a transfer of the actual interest. Fifth Third just continued to hold the note and mortgage, and there was an assignment in blank should Fifth Third have chosen to transfer that. What was the date of the assignment in blank? If you don't know off the top of your head. I can find it quite quickly. One first. Go ahead. June 11, 2007. Correct. What was the date of the loan? April 13, 2007. So why would you prepare an assignment in blank just two months after the loan? Your Honor, I can't speak to why there was an assignment in blank in the file. All I can say is that Fifth Third continued to hold the note and mortgage, and Fifth Third held an assignment in blank, which means that it was bearer paper, and Fifth Third continued to hold the interest in the note. I mean, there's no evidence, so let me speak to the Deutsche Bank case. In the Deutsche Bank case, the mortgage was to Merck. Here, the mortgage is to Fifth Third Mortgage Company. In the Deutsche Bank case, the note was to WMC Mortgage. Here, the note is to Fifth Third Mortgage Company. In the Deutsche Bank case, the court found that the defendant had made a prima facie case that the plaintiff lacked standing. So the real question here is whether Ms. Adams ever made a prima facie case that Fifth Third lacked standing. There's nothing in the record before the judgment of foreclosure is entered that could possibly be construed as raising a prima facie case that Fifth Third lacked standing. An assignment in blank, as noted, would simply mean that the person who possessed the note and mortgage is the person who owns the interest in the note and mortgage. So all of that evidence indicates that Fifth Third was the party who had the interest in the mortgage. The only, if you want to call it evidence, that there was some other party involved is unspecific assertions by Ms. Adams that she was told something about Wells Fargo. It's not clear when that happened. Now, after the judgment of foreclosure was entered, there were some references to Wells Fargo. However, at the time that the judgment was entered, all of the evidence before the record, including, importantly, the original note that was brought to court. So I think it's very important to point out that Appellant's brief claims that the original note was never presented, but it's clear from the supplemental record that Fifth Third brought the original mortgage to court and brought the original note to court pursuant to Ms. Adams' request. So we have a mortgage to Fifth Third, a note to Fifth Third, an assignment in blank, which would mean that Fifth Third had the interest, and we have Fifth Third presenting the original note in court. That's conclusive evidence that Fifth Third owns the note, and there's certainly no prima facie case or issue of fact that was raised by anything that Ms. Adams presented at the time the court entered the judgment of foreclosure sale. With respect to the rescission argument that counsel made briefly, I would say it's waived. The issue was not raised until a 1301 motion. The 1301 motion was, in essence, a motion to reconsider because no default was entered, so 1301 is not appropriate. This case is pretty much right on point there. It says, you know, you can't use both 1301 to avoid a motion to reconsider. So the first time the rescission argument was raised was in a motion to reconsider. Therefore, it was waived. However, we also explain, and counsel doesn't have really any response to it, that it's clear that you cannot rescind after three years in any event. Three years is an absolute bar of the time to rescind. It's actually in appellate's brief and throughout the record. They state the date that the rescission was in May 2012. That's more than three years after the consummation of the loan. It seems that in order to avoid this three-year time limitation, they're now making the argument, well, the loan was never consummated. It's hard to understand how the loan was never consummated. Ms. Adams was questioned by the court. She got the money. She bought the house. She signed the documents. She admits signing the documents in her pleadings, some of which are purported to be verified. So there's no question that this loan was consummated, and just because a person claims that they don't know the source of the funds, and there's really no ambiguity as to the source of the funds. It was Fifth Third. Her own pleadings say, I showed up, and it was Fifth Third who was the lender. So even if – there's no reason that a loan wasn't consummated just because someone doesn't know the source of the funds, but there's really no indication that there was any confusion as to the source of the funds. Ms. Adams has actually continued to raise this rescission argument in other forms, bankruptcy and eminent domain proceeding. Other judges have recommended, addressed this, and found that the three years did bar any attempted rescission. So I think the key here is I believe counsel said that if you raise the affirmative defense of standing, that it then becomes our burden to prove it. That, I don't believe, is an accurate recitation of the law. It's not simply alleging an affirmative defense that a bank lacks standing. You actually have to make a prima facie case that they do not have standing. That's what the Gilbert case says. Simply alleging, I don't believe these people have standing, is not enough to make a prima facie case in the face of the fact that Fifth Third has possession of the note, has possession of the mortgage. It's named on both the documents. It had the original note. The assignment in blank as a matter of law would mean that Fifth Third had the interest in the note. And the last thing I'll say is there was some suggestion that Ms. Adams was attempting to get a loan modification, that this was denied or that there was difficulty doing so. As I said, I don't think that anything that's said there is supported in the records or specific enough to make a difference in analysis of this case. But I would point out that Ms. Adams' own pleadings say that she asked for a forbearance. Basically, she wanted to cease payments for some period of time and was then told, no, you can't do that. A modification is your only option. So I don't think that some of those assertions related to modification are consistent with even Ms. Adams' own allegations throughout this case. There is actually a loss mitigation affidavit contrary to what counsel said in the records. So that was provided by Fifth Third Mortgage Company. And the last thing. Correct, Your Honor. I apologize. So we did attach that document. And counsel did linger on Ms. Adams' pro se status for a while. I am fully cognizant that pro se litigants often need some assistance and some leniency. However, that is not always the case. There are some pro se plaintiffs who use that leniency to their advantage. Having dealt with multiple litigation involving this plaintiff, I think that it needs to be evaluated consistent with Illinois law, which is that pro se plaintiffs are held to the same standards as attorneys. Ms. Adams has proven capable. She's filed numerous bankruptcy proceedings. She's filed numerous pleadings against. Those are all matters outside of the records. Yes, Your Honor. Therefore, to the extent that the pro se, I believe that the court should follow Illinois law. Bankruptcy is the cause of a number of different states. Yes, Your Honor. There was multiple states. And that was one of the reasons why there was another summary judgment. It wasn't just that we were filing multiple motions for summary judgment for purposes of harassment. It was the summary judgment was filed. Then a bankruptcy was filed. Another bankruptcy was filed. And then another summary judgment was filed, which was then amended. So to the extent that those are relevant to understanding the timeline, I think it's important to note that there's really no evidence that Fifth Third was doing anything other than proceeding in the normal course of a foreclosure, and it was extended by virtue of the actions that Ms. Adams took. I also don't think there's any evidence in the record that she served discovery or that Fifth Third failed to respond to discovery. The documents that were produced were produced in response to respite demands, not in response to document requests in this case, unless there are any other questions. Thank you. Thank you, Counselor. Counselor, you may proceed. Thank you, Judge. First of all, my strategy. The Truth in Lending Act, Regulation Z, Dodd-Frank, what we saw happen was banks were taking mortgages and bundling them. They would securitize them and then take them and throw them in the free market. And by doing that, you subject them to great risk, the risk of the stock market, which anybody has a perfect right to engage in. However, when it's your home that's being securitized and put into the market and you don't know it, that becomes a problem. And that's why we have Regulation Z. I think that's why the Supreme Court is moving, in this case, in this state. That is to boil down to this, that what we're doing here in this case is a mortgage is based on a bearer note. A bearer note is one of the most freewheeling liquid types of notes you could possibly have. And to use that as a defense is basically to say it's to negate any other claim of knowledge. It's like, well, whoever comes in that day, you know, they're taking somebody's house that they have to make payments to. Well, find out who has it. Whoever's holding it is the person that has that bearer note. It's like cash. A bearer note is cash. If you have a bearer note, your owner owns it this quarter, then he owns it, because you're holding it in your hand. It is like cash. So, basically, it puts the borrower, the owner, the person who lives in the home, to the burden to treat them. Who's going to work with it this time? Well, let's say it was Fifth Third Bank. Fifth Third Bank, then the question becomes, is Ms. Adams, is she attempting to delay things by when she claims she attempted to refinance an adjustable rate mortgage, which is not unheard of at all, or is it that it's completely sure that she did that, that she couldn't find who owned it and the bank wasn't really willing to tell her or didn't even know themselves because it's a bearer note. So at the time that you file, you have to prove who it is, especially, especially in a situation where we have a bearer note, where we have a blank claim. An assignment, as Your Honor points out, was like two months later. Isn't that a closing? I've never done real estate closings, but I used to be a real estate agent. And you sat there with the lawyer and the buyers and the seller, and all the papers went on with them. Everything was done right then. Funding, everything. And then to have a bearer note appear two months later, well, guess what? You don't know who your lender is. Well, I'm going to refinance. Well, it's a bearer note. I don't even know what to do with that. I don't know. Where do you find a bearer note owner? Where do you go to that? To the library? You ask the bank? She did issue a qualified information request, and they never responded to that. So she did everything she possibly could to attempt to remedy this morgue. Well, what's the purpose of this blank assignment? Is it to avoid filing fees when you document this transfer of assignment from person to person? This could have been passed around to 100 people before it walked back into the courtroom in 2009. Accountability. I think it's to avoid accountability. And when they want to. If it's not amenable to them to refinance, in other words, they'll make more money off the interest in the property, then they will refinance. So I have to know I'll make more money if I refinance to this person, and if they pay me more interest, I'll refinance. But if the property values have gone up and that property is now valuable, well, I'm not going to refinance. Sorry. I'm not going to do it. I can play games with you over there, over there, over here. And then suddenly they foreclose on them. That's what happened in this case. This property went up dramatically in value from the time she bought it until now. Is there anything in the record on that? That it went up in value? I believe there is. I believe right now on the bank. Where is it in the record? That's a great question. I can't point to it specifically. They did object to a securitization document that my client provided that is in the record, and I believe that may have the value. I believe that does have the value. The Department of Justice is in litigation with the same bank. And they're actually making the opposite argument. They're saying in that litigation that, oh, well, we didn't get service because we're two different entities. And here in this litigation they're saying, oh, we're the same entity, you know, you can't claim standing issues. So they're making two different arguments. Now, the counsel stated that she never points out that they had brought the note to court. Sorry, Mike. I forgot to bring my cufflinks. Can you see this? Okay. Thank you. She says that they brought the note to court and that's implicated in the record. It's actually not. They point to 736 to 742. That is the judgment of foreclosure of sale. That's the judgment. And, in fact, if that's where the note is, well, that's a little late to attach it to the judgment of foreclosure and sale. But I didn't see it in that document, 736 to 742. Don't you see it in March 2014 when there was a hearing on the summary judgment? The supplemental record? I think she's pointing to 10-7. The original note in open court. Yeah, the judge says it. The judge says it, absolutely, but I don't find it attached to the record. The judge admittedly says I'm finding that they brought their note in open court. But I would think that they would file it, file it, put it in standards so that now we can look at that note because we can't look at that note. The judge says that. The judge did say that. And I would say that the record is insufficient on the appellee's part because they did not submit it into the record. The court did say that a note was presented in open court. Which note? The note in this case? Does that note say the third thing, the third mortgage, Wells Fargo, or is it just a blank note? If it's the actual note, then it's a blank note. How can a judge know it was this note? That makes no sense. How can a judge say this is the note to this case? It's a blank note, according to counsel. It's a blank, bare paper. So whoever is holding it is the one that will hold it. And I think that's fundamentally unfair to mortgagors to say that we're going to take your mortgage. And that should be, this court should be the first court to say, if it's not a regular law, that bare paper should never be allowed in mortgages. Yeah, we want to have liquidity, we want to see investments made, but, you know, mortgages need to have some kind of accountability, some kind of traceability. You know, bare paper is too liquid. You can just, like I said, just hand it. You can just hand it, and the next day, there's got to be a trace. And that's exactly why Supreme Court now says 113 and 114. Now, is it retroactive? I'm going to honestly say I don't know. I looked at it, tried to look at it right now, whether or not it's retroactive, whether it's to 110. The case was pending during that time period. But there's no cases to say something like this would be retroactive. I know some laws are retroactive. I know some laws are retroactive. And there's a whole analysis in that. And I did not come prepared to that because I didn't look to that specifically. Because the case was pending, to me, it seemed like the rule should apply. Maybe they should have. Maybe in good faith. Once the rule came into effect, they would have had an obligation at that time, and they never did. Even to this day, it's now 2017, four years after that rule, and we still have nothing to that effect. So we would ask that the subject be removed. Thank you very much. Thank you for your time and hearing me today. I appreciate it. Thank you both for your argument, and we'll take this case under advisement. And if you can render a decision, then you'll be notified. Thank you for this course meeting.